312 So.2d 435 (1975)
Joseph S. GATLIN, Jr., et al.
v.
CITY OF LAUREL et al.
No. 48036.
Supreme Court of Mississippi.
May 5, 1975.
E.K. Collins, Lampkin Butts, Laurel, for appellants.
Harold W. Melvin, Laurel, for appellees.
Before RODGERS, P.J., and INZER and WALKER, JJ.
*437 RODGERS, Presiding Justice, for the Court:
On March 19, 1973, Atley Graham and Ron Graham received an adverse ruling from the City of Laurel Mayor and Board of Commissioners with respect to their request for a zoning change from RS-100 (single family residence) to BGH (heavy general business). The zoning commission recommended, and the Mayor and Board of Commissioners approved, the granting of a BGH-PC (heavy general business-planned center) zone only. The Grahams appealed to the Circuit Court of Jones County, and other interested neighbors who were protesting any zone change whatsoever also appealed. On October 24, 1973, the circuit court entered an order reversing the Mayor and Board of Commissioners and granting the zoning change to BGH (heavy general business) as requested. The objectors have appealed to the Supreme Court, and now argue the following assignments of error:
(1) The lower court erred in failing to order the city council to vacate any order amending the zoning ordinance from single family residence to any other zoning classification, as the appellees who were property owners seeking a change of zoning to heavy general business failed to meet their burden of proof that there had been a material change of circumstances in the neighborhood concerned, or that there had been a mistake in the original zoning;
(2) The lower court erred in substituting its opinion for that of the zoning board and city council (absent any finding that the inferior tribunals acted in an arbitrary, capricious or confiscatory manner) and in ordering a different zoning classification from that ordered by the inferior tribunals;
(3) The lower court erred in giving apparent exclusive evidentiary value to a realtor's opinion of the "highest and best use" of property in a zoning case, which is contrary to the law; and
(4) The lower court erred in failing to find any rezoning of the property by the city council to be arbitrary, capricious, confiscatory, and an abuse of discretion.
The following statement of facts will indicate what occurred prior to the order of the circuit court.
On September 25, 1970, Mr. Ron Graham purchased approximately four and one-half (4 1/2) acres of land outside the city limits of Laurel, Mississippi. On May 21, 1971, Mr. Atley Graham, Ron's father, purchased an adjacent four and one-half (4 1/2) acres, to create a nine-acre tract of land, with the intention of building two warehouses on the tract and moving his existing two auto supply distributor businesses to the warehouses.
On October 25, 1972, the City of Laurel extended its city limits by an action filed in the chancery court apparently with due notice to all landowners and interested parties. The extension of the city limits included the nine-acre tract here referred to as the Graham property. Prior to the annexation, the land in question had been unzoned. Upon annexation of the property, it was automatically zoned RS-100 (single family residence) in compliance with Section 1440 of Laurel, Miss., Ordinance 559-1970, Oct. 26, 1970 (Zoning ordinance). This ordinance further provided that within three months after annexation the zoning commission would submit a report to the Mayor and Board of Commissioners as to the proper zoning classification. Neither Atley nor Ron Graham objected to the property's being annexed to the city; however, they went to the chancery court in response to the letter of notice that they received, where they were informed that application for zoning classification would be taken up by the zoning commission.
On December 18, 1972, the Grahams filed a petition to rezone the property in question from RS-100 (single family residence) to BGH (heavy general business). On February 20 and March 1 of 1973, the *438 Mayor and Board of Commissioners held a public hearing on the petition and objections thereto, and heard evidence relating to the rezoning of the property in question.
At the hearing, the evidence presented consisted of five witnesses, plats, maps and drawings. Three witnesses testified on behalf of the petitioners, to-wit: Mr. Ron Graham, Mr. Atley Graham, and Mr. Harold Rose, a realtor. Two witnesses testified in behalf of the objectors: Dr. Joseph S. Gatlin, a nearby landowner, and Mr. George Maxey, a nearby landowner and attorney who did not actually testify, but did ask questions and make comments.
The evidence presented at the hearing indicated the following facts: The land of the Grahams fronted some 1,167 feet on Highway 15 North in Laurel, Mississippi. When the nine (9) acres were acquired, the land was vacant, hilly, and tree-covered. The former owner had the land platted into residential lots as early as 1959, though such plat was never recorded or dedicated. The nine-acre tract is bound on the west by Highway 15, on the south by West 20th Street, on the east by a fifty-foot dedicated, but unopened, street, and on the north by a similar fifty-foot dedicated, but unopened, street. Across the dedicated street, which runs east along the north boundary of the nine-acre tract, is the land of W.A. Wilby. In the southeast corner of the Graham tract is a 200 x 200 foot lot occupied by the residence of the appellant Gatlin. Across the fifty-foot dedicated street, which runs north along Gatlin's east line, Sam Hudson had purchased and constructed his residence. North of Sam Hudson and abutting the rear line of residential lots of Briarwood Drive, four of the Briarwood residents had acquired a total of five lots, thus extending their residential lots from Briarwood Drive to the unopened street. W.A. Wilby had purchased the lot to the north of these lots and adjacent to the unopened street. These persons were among the objectors. Their residential lots, therefore, lie across the fifty-foot platted, but unopened, street from the Graham property. The other landowners on Briarwood Drive, Westwood Acres, West 20th Street, Old Bay Springs Road, and Amy Road also objected to the property's being reclassified. Approaching the nine-acre tract from the south there is no commercial use on the east side of Highway 15 from 10th Street to 20th Street where the Graham land is located, except for an office complex utilized by NECO Industries. There are also a church, two residences, and a church softball field on that side. Running north from West 20th Street on Highway 15 to Amy Drive, there are a number of commercial businesses, including a roofing concern, a Bar-B-Q restaurant, a uniform rental service, a washeteria, a gasoline station, and a business called Par-Gas. West 20th Street is substantially a residential neighborhood from Highway 15 east to Old Bay Springs Road, which is also substantially a residential neighborhood.
After reviewing the above evidence, the Planning and Zoning Commission recommended to the Mayor and Board of Commissioners that the Grahams' request for a BGH (heavy general business) zone be denied, but that if the Grahams would submit a set of plans to the zoning commission prior to June 1, 1973, a classification of BGH-PC (heavy general business-planned center) could be granted. On March 13, 1973, the Mayor and Board of Commissioners adopted the zoning commission's recommendation.
On April 4, 1973, the Gatlins, et al., filed an appeal with the Circuit Court of Jones County, contending that the classification should have remained RS-100 (single family residence). Also on that date, Atley and Ronald Graham filed their appeal, contending that the classification should have been changed to BGH (heavy general business).
On October 24, 1973, the Circuit Court of Jones County, after having reviewed the transcript and briefs filed, and after having heard oral arguments, stated: "The *439 court finds that the only evidence, and the great weight of the evidence, supports a classification of B.G.H." The trial judge then ordered that the property in question be zoned BGH (heavy general business). From this order, Joseph S. Gatlin, Jr., et al., appealed.
The first issue to be determined is whether or not the automatic zoning of the property in question as RS-100 (single family residence) was valid and proper.
It has been said by this Court in Board of Supervisors v. Roberts, 287 So.2d 436 (Miss. 1973):
"In order to justify the rezoning of property from one classification to another, there must be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification. (Citing cases)." 287 So.2d at 437.
However, for this rule of law to be applicable, it must be determined that a change "from one classification to another" exists. This requires by necessity that there be a proper initial classification from which the change is being made. Section 1440 of Laurel, Miss., Ordinance 559-1970, Oct. 26, 1970 (Zoning ordinance), which was in existence at the time of the annexation, provides as follows:
"ANNEXATION: Any land subsequently annexed to the City of Laurel, Mississippi shall upon such annexation automatically be classified in the RS-100 Single Family Residence Zone and remain so zoned until an amendment to this ordinance shall place such annexed land in a different zone or zones. The Planning and Zoning Commission shall review the zoning classification of any annexed land and shall report thereon to the City Council giving their recommendations as to the proper classification. Said report shall be submitted within three (3) months of the effective date of the annexation."
Mississippi Code Annotated Section 17-1-15 (1972), governing municipal zoning regulations, provides as follows:
"The governing authority of each municipality and county shall provide for the manner in which zoning regulations and restrictions and the boundaries of zones shall be determined, established, and enforced, and from time to time, amended, supplemented or changed. However, no such regulation, restriction or boundary shall become effective until after a public hearing, in relation thereto, at which parties in interest, and citizens, shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality or county."
It is clear from the provisions of Section 17-1-15 that any valid zoning classification, including an "automatic zoning" classification as provided for in Section 1440 of the Laurel Zoning Ordinance, must be accompanied by (1) a public hearing and (2) proper notice of the hearing.
The validity of the annexation proceedings in the instant case is not at issue; neither is the validity of the notice and hearing for such annexation at issue. The appellants contend that the notice and hearing for the zoning classification of the property in question occurred simultaneously with the notice and hearing for the annexation. However, the record indicates that the only hearing which was in fact held was the hearing before the chancellor to present evidence on the petition for annexation in compliance with Mississippi Code Annotated Sections 21-1-31, -33 (1972).
It is apparent that the original classification of the property in question as RS-100 (single family residence) under Section 1440 of the Laurel Zoning Ordinance was not in compliance with Mississippi Code Annotated Section 17-1-15 *440 (1972). Therefore, the original RS-100 classification was not binding on the petitioners. See City of Jackson v. Freeman-Howie, Inc., 239 Miss. 84, 121 So.2d 120 (1960).
Consequently, there is no need to meet either of the requirements cited in Board of Supervisors v. Roberts, supra.
The zoning ordinance in question was never intended to give the public an opportunity to be heard with respect to the initial zoning of the annexed property since it was automatic. Furthermore, it was never intended that the automatic RS-100 (single family residence) classification be considered permanent since the ordinance requires a report to be submitted within three months to determine "the proper classification." The automatic-classification provision of the ordinance was merely a temporary stop-gap classification, and could not be effective for more than the three-month period provided for by Section 1440 of the Laurel Zoning Ordinance.
The next issue to be determined is: Did the circuit court err in reversing the order of the Mayor and Board of Commissioners and in entering its own order?
Since the original classification of the property in question as RS-100 (single family residence) was not binding on petitioners and was not permanent, then the hearing before the Mayor and Board of Commissioners was the first opportunity for the landowners to object to the classification of their property. Consequently, there was no need to show a material change in the surroundings or a prior mistake in order to determine the classification. The decision of the Mayor and Board of Commissioners needed only to meet the test of determining whether it was unreasonable, arbitrary, discriminatory, capricious, illegal, confiscatory, an abuse of discretion, or unsupported by any substantial evidence. If the answer were in the affirmative, then the courts could correct the decision. See, e.g., Currie v. Ryan, 243 So.2d 48 (Miss. 1970); Paine v. Underwood, 203 So.2d 593 (Miss. 1967); Adams v. Reed, 239 Miss. 437, 123 So.2d 606 (1960); Ballard v. Smith, 234 Miss. 531, 107 So.2d 580, 75 A.L.R.2d 152 (1958); City of Hattiesburg v. Pittman, 233 Miss. 544, 102 So.2d 352 (1958); Holcomb v. City of Clarksdale, 217 Miss. 892, 65 So.2d 281 (1953).
Furthermore, it is provided in Mississippi Code Annotated Section 11-51-75 (1972): "If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities."
It was the opinion of the circuit court that the decision of the Mayor and Board of Commissioners was unsupported by substantial evidence. The evidence indicated that the property values of the surrounding areas would not be lowered. Prior to the annexation of the property, no zoning existed.
While the evidence indicated that the areas east of Highway 15 were strictly residential areas, it was clearly established that property along both sides of the highway was developing as general business property.
We are of the opinion that the circuit court was correct in holding that the order of the municipal authorities was not supported by the evidence and was in fact arbitrary and capricious. We, therefore, affirm the judgment of the circuit court and remand the case to the municipal authorities so that they may correct their records to comply with this opinion.
Affirmed and remanded.
GILLESPIE, C.J., and PATTERSON, SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.